# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

DEBRA L. PAYNE,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05320-BHS-KLS

REPORT AND RECOMMENDATION

Noted for January 6, 2012

      Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

      On February 24, 2009, plaintiff filed an application for SSI benefits, and on March 2, 2009, she filed another one for disability insurance benefits, alleging disability as of March 1, 2008, due to depression, anxiety, a cognitive disorder, migraine headaches, and a hearing deficit.

REPORT AND RECOMMENDATION - 1

See Administrative Record ("AR") 10, 116, 119, 138. Both applications were denied upon initial administrative review and the application for SSI benefits also was denied on reconsideration. See AR 10, 69, 75. A hearing was held before an administrative law judge ("ALJ") on November 23, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 10, 29-63.

On December 10, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 10-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 2, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On April 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on July 15, 2011. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred in failing to: (1) properly determine the degree of functional limitation caused by plaintiff's mental impairments at step three of the sequential disability evaluation process[1]; (2) properly consider the functional limitations caused by her migraine headaches; (3) give legally sufficient reasons for rejecting the opinions of Norma L. Brown, Ph.D.; (4) properly discount plaintiff's credibility; and (5) properly reject her mother's lay witness statement. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step three of the disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.

REPORT AND RECOMMENDATION - 2

decision be reversed, and that this matter be remanded for further administrative proceedings. Although plaintiff requests oral argument in this case, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Step Three Functional Limitation Findings

As noted above, at step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of those listed in the "Listings". See 20 C.F.R § 404.1520(d); 416.920(d); Tackett, 180 F.3d at 1098. In doing so, the ALJ rates the claimant's degree of functional limitation by considering the following "four broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3), § 416.920a(c)(3). The Social Security Regulations further provide in relevant part:

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence,

REPORT AND RECOMMENDATION - 3

or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(4), § 416.920a(c)(4). In regard to each mental disorder contained in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A states as follows:

> Each [L]isting, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the [L]isting, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations[, that is, the four broad functional areas set forth in 20 C.F.R. § 404.1520a(c)(3) and 20 C.F.R. § 416.920a(c)(3)]). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06 . . . We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

In this case, the ALJ found in relevant part:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]istings 12.04, 12.06, and 12.09. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> Dr. [James] Bailey[, Ph.D.,] and Dr. [Thomas] Clifford[, Ph.D., both non-examining, consultative psychologists,] opined that the claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration (Exhibit 7F, 11F). I conclude that their assessment of the "paragraph B" criteria accurately reflects the record.

REPORT AND RECOMMENDATION - 4

> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Dr. Bailey and Dr. Clifford opined that the evidence did not establish the presence of the "paragraph C" criteria.

AR 16. Plaintiff argues the ALJ erred by failing to provide any explanation for how she arrived at her conclusions regarding the "B criteria." But the ALJ did provide such an explanation, in that she referred to the opinion of Drs. Bailey and Clifford in which plaintiff was found to have the same level of functional limitation.

Plaintiff argues, however, that such reference was insufficient, as there is no indication that Dr. Bailey and Dr. Clifford considered the November 2009 functional assessment Dr. Brown provided discussed below or the effects of her migraine headaches. As for migraine headache effects, the above step three inquiry concerns only mental functioning. Nor has plaintiff shown her migraines impacted such functioning in any way. Further, while Drs. Bailey and Clifford clearly could not have considered Dr. Brown's November 2009 functional assessment – as they issued their opinion several months prior thereto (see AR 300-16, 327)[2] – and while it appears Dr. Brown assessed plaintiff with more severe functional limitations than did Dr. Bailey and Dr. Clifford (see AR 368), any error by the ALJ here was harmless.

An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). First, plaintiff has not pointed to any evidence in the record that she meets or medically

---

[2] Indeed, the ALJ herself noted this and it seems took that factor into consideration in regard to the weight she gave the assessment Dr. Bailey and Dr. Clifford provided. See AR 20.

REPORT AND RECOMMENDATION - 5

equals any of the criteria for a listed impairment, even considering the functional assessment Dr. Brown provided.³ The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526). In addition, an ALJ need not "state why a claimant failed to satisfy every different section of the" Listings, particularly where the claimant has failed to set forth any reasons as to why the Listing criteria have been met or medically equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ's failure to discuss combined effect of claimant's impairments was not error, as claimant offered no theory as to how – or point to any evidence to show – his impairments combined to equal listed impairment); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

The ALJ, furthermore, went on to consider the impact of plaintiff's mental impairments and limitations at the later steps of the sequential disability evaluation process. See AR 16-22; Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process);

---

³ The record does contain an opinion from Trula J. Thompson, M.D., that plaintiff might meet the criteria for Listing 12.02 and Listing 12.04. See AR 20, 248. The ALJ assigned "no weight" to that opinion, however, noting that Dr. Thompson "merely recited medical evidence rather than providing a significant rationale for her opinion," and that the medical evidence in the record did "not establish any medically determinable cognitive disorder and treatment providers typically characterized [plaintiff's] depression as mild." AR 20. Plaintiff, furthermore, has not challenged the ALJ's findings here. Accordingly, given that an ALJ need not accept the opinion of even a treating physician, "if that opinion is brief, conclusory, and inadequately supported" or by "the record as a whole." See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Plaintiff thus has failed to establish Listing-level severity in this case.

REPORT AND RECOMMENDATION - 6

Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error ALJ committed in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps). Although each of these cases dealt with the ALJ's determination at step two, the same reasoning applies here.

II.     Plaintiff's Migraine Headaches and Dr. Brown's Opinions

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

REPORT AND RECOMMENDATION - 7

1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

With respect to the medical evidence in the record concerning her migraine headaches, plaintiff argues the ALJ's failure to find those headaches would cause any absences from work, seems contrary to the ALJ's finding that they constituted a severe impairment. But the inquiry as to whether an impairment is severe that the ALJ conducts at step two of the sequential disability evaluation process, is merely a *de minimis* screening device used to dispose of groundless claims. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, just because an impairment is

REPORT AND RECOMMENDATION - 8

found to be severe at that step – i.e., that it has "more than a minimal effect" on a claimant's ability to work (see SSR 85-28, 1985 WL 56856 *3; see also Smolen, 80 F.3d at 1290; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)) – this does not mean the ALJ later will be required to adopt any actual limitations stemming therefrom. Indeed, plaintiff has pointed to nothing in the medical evidence in the record that would support a finding that she would need to be absent from work due to her headaches.

As for functional limitations stemming from plaintiff's alleged mental impairments, the ALJ assigned "significant weight to the opinions of Dr. Bailey and Dr. Clifford," but assigned "substantially less weight to the opinion of Dr. Brown," stating further in relevant part:

> . . . In January of 2009 [Dr. Brown] reported the claimant forgot where she was going when driving. However, the claimant does not drive because she lost her license secondary to a DUI charge. Dr. Brown reported the claimant had visual hallucinations, which the claimant did not report elsewhere. She also concluded that the claimant had a traumatic brain injury, which is not corroborated elsewhere. Dr. Brown reported the claimant was markedly depressed based on her responses on the Beck Depression Inventory (Exhibit 3F). However, treatment records show the claimant's depression was typically characterized as mild. A report dated March 23, 2009 shows the claimant was psychiatrically stable (Exhibit 14Fp13). This was only a couple of months after Dr. Brown's first evaluation. When Dr. Brown evaluated the claimant a second time she again opined that the claimant had marked functional limitations. However, her opinions were clearly based, in large part, on the claimant's less than fully credible self report in the context of disability evaluations. The functional limitations opined by Dr. Brown are not consistent with the treatment records or the claimant's actual functioning as demonstrated by her daily activities and social interactions.

AR 20. Plaintiff argues these are not valid reasons for rejecting the mental functional limitations found by Dr. Brown in her opinions. The undersigned agrees with plaintiff here in regard to Dr. Brown's later opinion, but not with respect to her earlier one.

Not all of the reasons the ALJ gave for rejecting Dr. Brown's March 2009 opinion are valid. For example, while it may be that plaintiff lost her driving license secondary to a DUI

REPORT AND RECOMMENDATION - 9

charge, this does not mean she had no problems with her memory when driving, though it would indicate a willingness to drive on her part without a valid license. In addition, although Dr. Brown stated plaintiff had "several symptoms of Mild Traumatic Brain Injury," she listed that as being only a possible diagnosis that needed additional information to either establish it or rule it out. AR 227. In addition, the ALJ fails to state which treatment records showed her depression "typically" was characterized as being mild, nor does she explain why such characterizations – to the extent they exist – are more credible than the psychological testing conducted by Dr. Brown. Indeed, the assessment provided by Drs. Bailey and Clifford – in regard to which, as discussed above the ALJ assigned "great weight" – supports a finding that plaintiff has mental limitations in at least some functional areas stemming in part from her depression, albeit not at a marked level as found by Dr. Brown. See AR 310, 314-15.

On the other hand, the undersigned finds it was proper for the ALJ to reject Dr. Brown's March 2009 opinion on the basis that plaintiff was found to be psychiatrically stable later that month. The undersigned agrees with plaintiff that a statement that one is "psychiatrically stable" without any further comment, does not necessarily show such an individual is without significant functional limitations, but rather may merely indicate the condition was unchanging at the time. See, e.g., AR 261. The March 23, 2009 treatment note, however, also reported that plaintiff was "doing well on" her medication. AR 345. This was noted by the ALJ earlier in her decision. See AR 18. These comments thus show that not only was plaintiff considered to be doing well, but she was stable at that level. Indeed, also as noted by the ALJ, it seems plaintiff had been doing well since at least early November 2008. See AR 18, 254.

The ALJ did err though in rejecting the opinion Dr. Brown provided in early November 2009. See AR 365-72. A physician's opinion premised on a claimant's subjective complaints

REPORT AND RECOMMENDATION - 10

may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d at 601. But Dr. Brown performed a mental status examination, in which she recorded her observations of plaintiff, and conducted psychological testing. See AR 370-71; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting psychiatric diagnosis is competent evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (clinical findings may consist of diagnoses and observations of psychologist); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (mental status examination results provide basis for diagnosis of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury). As pointed out by plaintiff, furthermore, there is no indication Dr. Brown relied more heavily on plaintiff's own self-reports than on the more objective evidence she provided. The ALJ gave no other reasons for rejecting this opinion. Accordingly, the ALJ erred here.

III.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See [Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

REPORT AND RECOMMENDATION - 11

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff argues the ALJ erred in rejecting her testimony that she experienced debilitating headaches two to three times a month. Although plaintiff limits her argument here to the issue of her headaches, as indicated above, an ALJ need not expressly link his or her reasons for rejecting a claimant's credibility to a specific portion of the claimant's testimony. That is, while the ALJ must identify what aspects of the claimant's testimony he or she finds lacks credibility and the evidence supporting that determination, the ALJ need not do so with respect to each aspect of the claimant's testimony to find he or she less than credible overall. Indeed, as noted above, the ALJ may discount a claimant's credibility on the basis of a claimant's general reputation for lying, as well as other testimony that appears less than candid. In any event, as discussed below, the ALJ did provide specific, valid reasons for discounting her headache testimony.

The ALJ, for example, found plaintiff to be not fully credible because:

> The claimant testified that depression, anxiety and headaches would cause her to miss work. Medical records show she was treated for depression, anxiety and headaches while she was still working at the casino. However, the claimant alleged disability beginning March 2008, which is approximately

REPORT AND RECOMMENDATION - 12

> two months after she stopped working (Exhibit 3Ep2). On the disability
> report she indicated she was "let go." However, on April 28, 2008, the
> claimant reported she quit work to go back to school (Exhibit 6Fp14). I note
> that on February 4, 2008, she reported she was happy to have more free time
> (Exhibit 6Fp19). It therefore appears that the claimant left her job, at least in
> part, for reasons unrelated to her impairments.

AR 18. This was a valid basis upon which the ALJ could find plaintiff not entirely credible. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted credibility of plaintiff in part because he left his job for reasons other than his alleged impairment).

The ALJ also discounted plaintiff's credibility because:

> The claimant has no history of psychiatric hospitalization and did not receive
> any counseling for anxiety or depression during the relevant period. . . . A
> report dated July 21, 2008, shows she was psychiatrically stable (Exhibit
> 6Fp12). A report dated November 3, 2008, indicates she was doing well
> overall (Exhibit 6Fp5). Another report dated March 23, 2009, shows the
> claimant had done well on medication and was psychiatrically stable.
> Therapy was recommended for her chemical dependence issues, but not for
> her depressive or anxiety symptoms (Exhibit 14Fp13). . . .
>
> . . . The claimant testified that she had migraines approximately three times
> per month in addition to "little" headaches around four times per week. I note
> that the claimant was having rebound headaches as a result of medication over
> use. On January 27, 2009, she reported doing better since she stopped taking
> daily pain medications and started amitriptyline (Exhibit 2Fp1). Treatment
> records after March 2009 do not show the claimant reporting significant
> problems with migraines. On May 26, 2009, she reported she had not taken
> medications in a couple of weeks (Exhibit 14Fp10). Overall, the medical
> records do not show that the claimant's migraines are frequent or severe
> enough to prevent her from sustaining employment. She indicated she had
> difficulty quantifying how many of the little headaches she had because she
> no longer paid any attention to them. The fact that she can ignore the
> headaches suggests they do not significantly limit her functioning.

AR 18. These too constituted proper reasons for discounting plaintiff's credibility. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility on basis of medical

REPORT AND RECOMMENDATION - 13

improvement); Tidwell, 161 F.3d at 601 (same); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

It is true that plaintiff reported still having headaches about two to three times per week in January 2009. See AR 216. At the same time, however, she reported that they were both "less intense and less frequent." Id. In addition, while the documentation of medication overuse may indicate she was seeking relief for her headaches, it also may indicate a failure to properly follow recommended treatment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony"); Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, court must uphold defendant's decision). As noted by the ALJ, furthermore, plaintiff was no longer reporting significant problems with her migraine headaches after March 2009, and in late May 2009, she reported not having taken medications in a couple of weeks, indicating a lack of need for them. See AR 342.

While plaintiff argues the record fails to show she did not report her headaches had stopped, this merely is an alternative, rational interpretation of the evidence. See Allen, 749 F.2d at 579. Further, the fact that plaintiff may have continued to have medications prescribed alone does not establish the existence of an actual need to keep taking them. Although it may be true, furthermore, that plaintiff has not alleged her little headaches are disabling, and thus this reason by itself would not be a clear and convincing reason for discounting her credibility regarding her migraine headaches, as just discussed, the ALJ's other reasons were proper.

Lastly, the ALJ discounted plaintiff's credibility on the following basis:

> The claimant's activities demonstrate that she has remained fairly active since she stopped working. On the function report she reported doing light

REPORT AND RECOMMENDATION - 14

> housework, cooking, and watching television. The claimant reported she did light cleaning and cooking for her grandparents and babysat for friends. She reported going outside every day and indicated she could manage money (Exhibit 5E). In September of 2008 she reported she was caring for her nephew on a daily basis (Exhibit 2Fp4). I note that the claimant's babysitting activities are consistent with semi-skilled, medium level work described in the Dictionary of Occupational Titles (Child monitor, DOT# 301.677-010). . . .

AR 19. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict his [or her] other testimony." Id.

Under the first ground, a claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. But the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. As plaintiff has not challenged this stated basis for discounting her credibility, and the substantial evidence largely appears to support the findings of the ALJ on this issue, the undersigned finds no error here as well.

IV. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis, 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination

REPORT AND RECOMMENDATION - 15

to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement from plaintiff's mother, Linda George, in which she sets forth her observations of plaintiff's symptoms and limitations. See AR 192-93. Plaintiff argues that while the ALJ noted this statement, she failed to give any specific reason for rejecting it. The ALJ, though, provided several reasons for rejecting it, stating in relevant part:

> . . . I assign little weight to Ms. George's written statement. Ms. George reported the claimant's neck bothered her, but the claimant has not alleged any limitations arising from a neck problem. On the function report the claimant reported going outside every day. Interestingly, the claimant reportedly told Dr. [Esther S.] Rawner[, M.D.,] she was raised by her grandparents and did not really know her mother (Exhibit 2Fpl, 5).

AR 20. Plaintiff asserts, however, that none of these stated reasons are valid. The undersigned disagrees. Plaintiff argues she has not alleged limitations related to her neck. But the important point here is that since plaintiff's mother expressly reported that she had problems with her neck, this calls into question the extent she was familiar with plaintiff's functioning. Thus, this was a germane reason for discounting plaintiff's mother's statement. Accordingly, the ALJ did not err in doing so on this basis, even though the undersigned agrees with plaintiff that the other reasons the ALJ gave are not clearly supported by substantial evidence in the record.[4]

V.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

---

[4] For example, plaintiff testified at the hearing that she "can't go out," that she "can't be around people" and that she lived with both her mother and her grandparents, switching places every couple of days, which indicates that at least to some extent plaintiff's mother had an opportunity to observe her. See AR 52-53.

REPORT AND RECOMMENDATION - 16

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional limitations in light of the ALJ's error in rejecting Dr. Brown's early November 2009 opinion, it is unclear whether the ALJ's assessment of plaintiff's ability to perform work-related activities and thus her determination that plaintiff is capable of performing other jobs and is therefore not disabled is supported by substantial evidence.[5]

---

[5] The ALJ found plaintiff had a mental residual functional capacity to "**remember, understand and carry out simple, repetitive tasks as well as some well learned detailed tasks in an environment that entails no more than occasional contact with the general public**." AR 16 (emphasis in original).  If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.  In assessing a claimant's RFC, the ALJ is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As discussed above, in her early November 2009 opinion, Dr. Brown assessed plaintiff with limitations that are more severe in certain functional areas than those included by the ALJ in his RFC assessment.  Accordingly, it is far from clear that the ALJ's assessment was proper.  In addition, if a claimant cannot perform his or her past relevant work at step four of the sequential evaluation process, at step five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99

REPORT AND RECOMMENDATION - 17

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. The undersigned thus also recommends the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 6, 2012**, as noted in the caption.

DATED this 19th day of December, 2011.

Karen L. Strombom
United States Magistrate Judge

---

(9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert that contained substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. See AR 55-56. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work background as plaintiff – would be able to perform other jobs. See AR 56. Based on that testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy at step five. See AR 21-22. Again, though, due to the ALJ's error in discounting Dr. Brown's early November 2009 opinion, it is unclear whether the hypothetical question the ALJ posed accurately described all of plaintiff's mental functional limitations, and whether the ALJ's step determination is supported by substantial evidence.

REPORT AND RECOMMENDATION - 18